NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05A295

_____

## JOHN DOE ET AL. *v.* ALBERTO R. GONZALES, ATTORNEY GENERAL, ET AL.

ON APPLICATION TO VACATE STAY

[October 7, 2005]

JUSTICE GINSBURG, Circuit Justice.

This is an emergency application to vacate an order entered by the United States Court of Appeals for the Second Circuit staying a preliminary injunction entered by the United States District Court for the District of Connecticut. The applicants—a member of the American Library Association referred to herein as "John Doe," the American Civil Liberties Union, and the American Civil Liberties Union Foundation—brought suit in district court, alleging that the nondisclosure provision set forth in 18 U. S. C. §2709(c) violates their First Amendment right to freedom of speech. The District Court granted the applicants' motion for a preliminary injunction against enforcement of §2709(c). A panel of the Second Circuit granted the Government's motion to stay the District Court's judgment pending an expedited appeal. The same panel denied the applicants' subsequent motion to vacate the stay in light of changed circumstances. In view of the character of the constitutional issue presented and the expedited schedule ordered by the Court of Appeals, I deny the application and grant the parties' accompanying motions for leave to file under seal.

Section 2709, as amended by the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (hereinafter Patriot Act), authorizes the Federal Bureau of Investigation (FBI) to "request the name, address, length of service, and local and long distance toll billing records of a person or entity" if the FBI asserts in writing that the information sought is "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities . . . ." 18 U. S. C. §2709(b) (2000 ed., Supp. II). The provision authorizes the FBI to issue such requests to "electronic communication service providers." §2709(a) (2000 ed.). In this case, the FBI requested information under this Section in the form of a "National Security Letter" (NSL). At issue in this case is §2709(c), which prohibits the recipient of an NSL from disclosing that fact. *Ibid.* (prohibiting "disclos[ure] to any person that the [FBI] has sought or obtained access to information or records under this section"). The current debate over renewal of the Patriot Act has spawned eight bills, currently pending before the Senate and the House of Representatives, proposing various amendments and revisions to §2709.

John Doe received an NSL demanding that it disclose "any and all subscriber information, billing information[,] and access logs of any person or entity" associated with a specified Internet Protocol (IP) address during a specified period. The NSL tracked the language of §2709 and included the admonition that Doe was not to disclose that the FBI had sought or obtained information from it. Doe brought suit in district court, alleging that the gag imposed by §2709(c) is an unlawful prior restraint on speech that is causing irreparable harm by preventing Doe's effective participation in the current debate—both in Congress and among the public—regarding proposed revisions to the Patriot Act.

The District Court granted Doe's motion for a prelimi-

nary injunction, holding that Doe demonstrated a substantial likelihood of success on the merits and irreparable harm in the absence of the relief sought. Emergency Application to Vacate Stay, App. B, p. 9 (hereinafter Application). The court determined that, as a "categorical prohibition on the use of any fora for speech, on all topics covered by §2709(c)," the gag provision is a prior restraint and a content-based restriction on free speech. *Id.*, at 12–13. The District Court therefore concluded that the prohibition on disclosure is permissible only if it satisfies strict scrutiny. *Id.*, at 13. In its strict-scrutiny analysis, the court considered two Government interests the gag provision might serve: the Government's general interest in national security and its particular interest in conducting effective counterterrorism investigations. *Id.*, at 15. While the District Court acknowledged the Government's general interest in protecting national security and its expertise in the area of counterterrorism, *ibid.*, that court found "nothing in the record" (which included classified and other sealed *ex parte* submissions) suggesting that the Government has a compelling interest in preventing disclosure of Doe's identity. *Id.*, at 17, and nn. 7–8.

The Government's argument invoked a "mosaic theory": Although Doe's identity "may appear innocuous by itself, it could still be significant to a terrorist organization when combined with other information available to it." *Id.*, at 18. The District Court acknowledged that federal courts have credited the mosaic concept in the Freedom of Information Act (FOIA) context, but it noted that the instant case is distinguishable in this respect: "Th[e] difference between seeking to obtain information and seeking to disclose information already obtained raises [the plaintiffs'] constitutional interests in this case above the constitutional interests held by a FOIA claimant." *Id.*, at 19 (quoting *McGehee* v. *Casey*, 718 F. 2d 1137, 1147 (CADC 1983)). In any event, the court held, "the defendants'

conclusory statements that the mosaic argument is applicable here, absent supporting facts, would not suffice to support a judicial finding to that effect." Application, App. B, at 19–20. The District Court noted in this regard that it had asked counsel for the Government at oral argument if he could confirm that there was, in fact, a "mosaic" in this case—*i.e.*, whether there are in fact other pieces of information that, when combined with Doe's identity, would hinder the investigation. Counsel could not so confirm. *Id.*, at 20.

The District Court did not "question that national security can be a compelling state interest, or that nondisclosure of [an] NSL recipient's identity could, in some circumstances, serve that interest." *Ibid..* It found, however, that the Government failed to show a compelling interest in preventing disclosure in this case:

> "Based on the foregoing, including the sealed portion about Doe, and what Doe is, the nature and extent of information about the NSL that has already been disclosed by the defendants, and the nature and extent of the information that will not be disclosed, this court concludes that . . . the government has not demonstrated a compelling interest in preventing disclosure of the recipient's identity." *Ibid.* (footnote omitted).

The District Court concluded that, "[e]specially in a situation like the instant one, where the statute provides no judicial review of the NSL or the need for its nondisclosure provision, . . . the permanent gag provision . . . is not narrowly drawn to serve the government's broadly claimed compelling interest of keeping investigations secret." *Id.*, at 22–23. The court also appraised §2709(c) as "overbroad as applied with regard to the types of information that it encompasses." *Id.*, at 23. It found §2709(c)'s ban "particularly noteworthy" in light of the fact that proponents of the Patriot Act have "consistently

relied on the public's faith [that the Government will]
apply the statute narrowly . . . ." *Id.*, at 26 (quoting Re-
marks of Attorney General John Ashcroft, Protecting Life
and Liberty (Memphis, Tenn., Sept. 18, 2003), available at
http://www.usdoj.gov/archive/ag/speeches/2003/091803me
mphisremarks.htm (as visited Oct. 7, 2005, and available
in Clerk of Court's case file) (characterizing as "hysteria"
fears of the Executive's abuse of the increased access to
library records under the Patriot Act and stating that "the
Department of Justice has neither the staffing, the time[,]
nor the inclination to monitor the reading habits of Ameri-
cans. No offense to the American Library Association, but
we just don't care.").

   Having thus concluded that §2709(c) fails strict scru-
tiny, the court granted the applicants' motion for prelimi-
nary injunctive relief, but stayed its ruling until Septem-
ber 20, 2005, to give the Government the opportunity to
"file an expedited appeal and submit an application for a
stay pending appeal." Application, App. B, at 29. The
Government did just that, and on September 20 the Court
of Appeals granted the Government's motion:

   "Although there is a question as to the likelihood of
   [the Government's] success on the merits and some in-
   jury to [the applicants] if a stay is granted, the [Gov-
   ernment has] demonstrated that [it] will suffer ir-
   reparable harm and the public interest [will be]
   significantly injured if a stay is not granted. The bal-
   ance of harms tilts in favor of [the Government]. *Mo-
   hammed* v. *Reno*, 309 F. 3d 95, 100 (CA2 2002). This
   appeal is hereby expedited and the following briefing
   schedule is in effect: [The Government's] brief shall
   be filed no later than September 27, 2005; [the appli-
   cants'] brief shall be filed no later than October 4,
   2005; [the Government's] reply brief shall be filed no
   later than October 10, 2005." *Id.*, App. D.

   Shortly after the Court of Appeals entered the stay, the parties learned that, through inadvertence, Doe's identity had been publicly available for several days on the District Court's Web site and on PACER, the electronic docket system run by the Administrative Office of the United States Courts. *Id.*, App. F., at 3–5 (decl. of Melissa Goodman). The parties also learned that the media had correctly reported Doe's identity on at least one occasion. See, *e.g.*, Cowan, Librarians Must Stay Silent in Patriot Act Suit, Court Says, N. Y. Times, Sept. 21, 2005, at B2. The applicants immediately moved to vacate the stay in light of this information. The Court of Appeals denied the motion, "on the ground that the additional circumstances relied upon by [the movants] do not materially alter the balance of harms . . . ." Application, App. E. The applicants then filed the instant emergency application, urging me, in my capacity as Circuit Justice, to vacate the stay and thereby allow Doe to contribute its first-hand account to the ongoing debate regarding proposed revisions to the Patriot Act.

   In support of their plea for an immediate order lifting the stay, the applicants stress that Doe seeks only to confirm its identity as the recipient of an NSL. It does not seek to disclose the content of the NSL, nor does it seek to disclose the date on which it was received. They point out that, in another case bearing the same name involving a *facial* challenge to §2709, the Government argued that courts should consider the constitutionality of the gag provision on a case-by-case basis, "granting relief where— but only where—it can be shown that the compelling governmental interest[s] underlying the non-disclosure requirement are not in jeopardy." *Id.*, App. B, at 18, quoting Defendants-Appellants' Reply Brief 25, in *Gonzales* v. *Doe*, No. 05–0570 (CA2 filed Feb. 3, 2005) (on appeal from *Doe* v. *Ashcroft*, 334 F. Supp. 2d 471 (SDNY 2004)). That

is precisely what the District Court did here. The appli-
cants underscore this anomaly: Doe—the only entity in a
position to impart a first-hand account of its experience—
remains barred from revealing its identity, while others
who obtained knowledge of Doe's identity—when that cat
was inadvertently let out of the bag—may speak freely on
that subject.

Although the applicants' arguments are cogent, I have
taken into account several countervailing considerations
in declining to vacate the stay kept in place by the Second
Circuit pending its disposition of the appeal. I am mind-
ful, first, that "interference with an interim order of a
court of appeals cannot be justified solely because [a Cir-
cuit Justice] disagrees about the harm a party may suffer."
*Certain Named and Unnamed Non-citizen Children* v.
*Texas*, 448 U. S. 1327, 1330–1331 (1980) (Powell, J., in
chambers). Respect for the assessment of the Court of
Appeals is especially warranted when that court is pro-
ceeding to adjudication on the merits with due expedition.
The principal briefs have been filed and I anticipate that
the Court of Appeals will hear argument promptly and
render its decision with appropriate care and dispatch.

Also weighing in favor of keeping the stay in effect
pending the full airing the Second Circuit has ordered, the
District Court held unconstitutional—as applied to the
facts of this case—a provision of an Act of Congress. A
decision of that moment warrants cautious review. Fur-
ther, the Government points out that the redacted version
of the complaint, prepared in consultation with the Gov-
ernment, identifies Doe as a member of the American
Library Association. "The American Library Association,"
the Government footnotes, "lobbies Congress on behalf of
its members and is free to note that one of those members
has been served with an NSL."

In sum, the applicants have not shown cause so extraor-
dinary as to justify this Court's intervention in advance of

the expeditious determination of the merits toward which the Second Circuit is swiftly proceeding.